UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SHAMIKA SIMON,

                                         Plaintiff,

- against –

NEW YORK CITY DEPARTMENT OF EDUCATION, ABE STARK PRIMARY SCHOOL 346, MR. KEVIN CAIFA, and DR. POLIXENI VAFLADI EdD.

                                        Defendants.

Case No. **23-CV-7796**

**COMPLAINT WITH JURY DEMAND**

Hon. Judge _____

---

Plaintiff, SHAMIKA SIMON ("Simon" or "Plaintiff"), through her attorney, Vincent Miletti, Esq., with the Law Office of Vincent Miletti, Esq., respectfully files this Verified Complaint against defendants, NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE"), ABE STARK PRIMARY SCHOOL 346 ("P.S. 346"), MR. KEVIN CAIFA ("Caifa"), and DR. POLIXENI VAFLADI EdD ("Vafladi") (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1. This is an action arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA"), and various state and local law, seeking declaratory and injunctive relief and damages to redress the harms and losses that Plaintiff suffered because of unlawful workplace practices perpetrated and ratified by defendants, predicated on their unlawful discriminatory conduct, which discriminated against Plaintiff based on race (African American), disability, which was only

exacerbated once they engaged in invidious retaliation for her opposition to the defendants' unlawful, discriminatory conduct.

2. Plaintiff has been employed as a dedicated Teachers Assistant / Para Professional for the New York City Department of Education ("DOE") and Abe Stark Primary School 346 ("P.S. 346") since May 2005 and has devoted her life to helping shape and build the minds of today's youth within the State's educational system. Despite her best efforts, however, Plaintiff, an African American female who suffered catastrophic and permanent injuries after a serious car accident in 2013, could not overcome the blatant prejudices and biases that permeated her work environment. Indeed, although she had more than proved her worth as a Teacher's Assistant, Para Professional, mentor and friend to her students, Plaintiff was treated with a blatant disregard for her health and civil rights, exposed to a hostile, discriminatory and toxic work environment, where she was subjected to (a) contractually improper job assignments, (b) placed in assignments who placed both her life, and the life of her students, in jeopardy, (c) had her employee file and professional image desecrated, with fabricated notices, lies, missed documentation, falsified documents, (d) excessive disciplinary measures that were taken without following proper protocol and due process measures, (e) denied basic terms and conditions as an employee, (f) denied time off, (g) denied corrective measures, and (h) unfairly terminated while on approved medical leave. All of this became worse after she was forced to file a grievance to protect her interest, she was subjected to retaliation from the Principal, Mr. Kevin Caifa ("Caifa") and simply subjected to blatant disparate treatment and a toxic work environment on the basis of her race, disability, and her legal right to take protected leave an engage in other actions that she had a right to do under the law.

3. Defendant's unlawful conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages.

## PARTIES

4. Plaintiff, SHAMIKA SIMON, is an individual residing in Bronx County, New York. Plaintiff was employed by Defendants DOE and P.S. 346 working directly under Defendants, DR. POLIEXENI VAFIADI, EdD ("Vafiadi") & MR. KEVIN CAIFA ("Caifa"). and/or certain other supervisors. At all times relevant herein, Plaintiff was an "employee" within the meaning of the NYSHRL.

5. Defendant DOE is a department of the government of New York City that manages the public school system of the City and operates primarily out of 52 Chambers Street, New York, New York 10007.

6. Defendant ABE STARK PRIMARY SCHOOL 346 is a municipal corporation with substantial operations in the State of New York doing business at 1400 Pennsylvania Avenue, Brooklyn, New York 11239.

7. Upon information and belief, defendant, MR. KEVIN CAIFA is an individual residing in the State of New York. He is sued in his individual capacity and official capacity as the Principal of P.S. 346.

8. Upon information and belief, defendant, DR. POLIXENI VAFIADI EdD. is an individual residing in the State of New York. She is sued in her individual capacity and official capacity as an Assistant Principal of P.S. 346.

9. Defendants DOE & P.S. 346 had 15 or more employees during the relevant time period.

## JURISDICTION & VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII and the FMLA.

11. Further, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA. This action is authorized and instituted pursuant to the ADA as amended, 42 U.S.C. §§ 12101 et seq.

12. Venue is proper in the district pursuant to 28 U.S.C. § 1391 because (1) the unlawful employment practice occurred within New York City, (2) the Defendants have maintained or administered employment records within New York City (3) the Plaintiff performed her work related functions and services within New York City. See 29 U.S.C. § 2000e-5(f)(3).

## PROCEDURAL REQUIREMENTS

13. Before commencing this action, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII.

14. Plaintiff's filed the charge with the EEOC within 300 days of the occurrence of one or more of the alleged employment practices that violated Title VII and the ADA.

15. Plaintiff's EEOC charge arose out of many of the same facts alleged herein.

16. On or about July 21, 2023, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff is filing her complaint within 90 days of receiving that Notice of Right to Sue.

17. Any and all other prerequisites to the filing of this suit have been met.

## FACTS

18. Ms. Simon has been employed as a Teacher's Assistant for the DOE from February 2005 through on or around June 14, 2018, receiving what is likely the top grade salary for her position, as well as fringe benefits, health insurance, retirement benefits (i.e. 401K), etc.

19. Prior to her termination in 2018, Ms. Simon has always had a deep passion and zeal for her career and everyone in her circle of life knows her for going above and beyond for kids. She has been a valuable asset to her students and always went beyond the call of duty to ensure that the students she worked with were getting the most out of their academic curriculum.

20. While employed at P.S. 346, Ms. Simon worked in rotation with many colleagues who were more than pleased with her performance. Ms. Simon's co-workers admired her enthusiasm and her drive to see the students of P.S 346 be successful. During her employment for the DOE, Ms. Simon never received any disciplinary letters in her file that addressed poor job performance, the inability to perform any task, insubordination, or poor time and attendance.

21. However, Ms. Simon ran into several issues with Mr. Caifa, who was the principal of P.S. 346 beginning in or around 2006 and remained the principal throughout the rest of Ms. Simon's employment at the school. Mr. Caifa placed Ms. Simon on several contractually improper work assignments that jeopardized not only Ms. Simon's career, but also the safety of the students. Some of these improper duties included, but were not limited to, lunch duty, being alone in classroom switch students without a licensed professional present, and dismissing large groups of students on her own.

22. In 2011, Ms. Simon and many other colleagues were forced to file a common grievance in regards to the contractual violation and unfair treatment by Mr. Caifa. Soon after the grievance was filed, Mr. Caifa began to engage in retaliatory behavior.

23. In the winter of 2013, Ms. Simon was the victim of a car accident that left her with permanent injuries. On or around December 11, 2013, Ms. Simon was declared disabled by Dr. Khakhar and was unable to work as a teacher's assistant from November 27, 2013, through January 15, 2014.

24. Immediately after the accident, Ms. Simon notified Dr. Vafiadi that due to the accident and her injuries, Ms. Simon was going to be out of work for a while to recover, as per doctor's orders. Soon after, Ms. Simon was told by Mr. Caifa that she would have to apply for medical leave through FMLA. Ms. Simon applied for FMLA and her medical leave was approved for the block of time from December 2, 2013 until January 15, 2014. The medical leave approved through FMLA also covered time off for physical therapy treatments.

25. During Ms. Simon's approved medical leave period, Mr. Caifa alleged that Ms. Simon was absent without authorization for thirty days. However, each day that Ms Simon was absent from work was documented and covered under her approved medical leave by the school's payroll secretary. Ms. Simon provided doctors notes to her workplace excusing her absences. Eventually, Ms. Simon provided Mr. Caifa with several other FMLA applications that he refused to approve for no justifiable reason.

26. At some point, an investigation was held by investigator Yaozu Xiong of the New York State Department of Labor's Wage and Hour Division. The investigation concluded that Mr. Caifa was unable to provide proof that he ever processed Ms. Simon's FMLA applications, nor was he able to provide proof that he ever communicated to Ms. Simon stating that she was not qualified for leave. Rather, Mr. Caifa appears to have ignored Ms. Simon's FMLA applications altogether.

27. As Ms. Simon's employment at P.S. 346 continued, so the disparate treatment against her. During the 2014-2015 school year, Ms. Simon was dealing with a high-risk pregnancy. Mr. Caifa alleges that Ms. Simon was absent for a period of 22 days, when in fact, Ms. Simon was out for 14 days. Ms. Simon provided the school with medical documentation for each day that she was unable to attend work due to her high-risk pregnancy and, if documentation was not provided, her absences were contractually permitted.

28. During the 2015-2016 school year, Mr. Caifa further alleged that Ms. Simon was absent for a period of 52 days, but this is also untrue. Ms. Simon was absent for 30 days, however, 10 of those days were contractually permitted and the other days were noted by her physician as being due to her pregnancy-related disability resulting from the same high-risk pregnancy mentioned above.

29. During the 2016-2017 school year, Mr. Caifa claims that Ms. Simon was absent for 42 days. However, there is far more nuance to this situation than Mr. Caifa includes. Ms. Simon was improperly suspended on January 31, 2017 from her job. However, Ms. Simon's employment was eventually reinstated and Ms. Simon received an arbitration award for the improper suspension and was made whole in regards to this incident. Any absences that were not related to the improper suspension were contractually permitted.

30. The fact of the matter is that even if Ms. Simon did engage in excessive absences or tardiness, she was not awarded with the same procedures and courtesies as other employees. For example, another employee of P.S. 346, Mrs. Carmen Sierra, who is white, received a personal letter in her file and the opportunity to meet with Mr. Caifa about her attendance. Additionally, another employee, Mrs. Hoffman, who is also white, received the same courtesies as Mrs. Sierra. The same was not done for Ms. Simon. Instead, Mr. Caifa fabricated meeting with Ms. Simon that never occurred. He fabricated Ms. Simon's unexcused absences from work and never addressed any attendance issues with Ms. Simon until 2018. Mr. Caifa's goal was to sabotage Ms. Simon's career because she is a black woman who has suffered from medical disabilities.

31. Ms. Simon is not the only black employee Mr. Caifa has discriminated against since he began his employment with P.S. 346 in 2006. Within his first year of being the principal of the school, he terminated Ms. Foster, who was one of the most highly effective special needs teachers at P.S. 346. Throughout his time as principal, he has since terminated Mr. Allen Hargrove Jr., made

false allegations against Ms. Timmons, Mr. Watson, Mrs. Williams, and Ms. Simon in an attempt to expedite their terminations. Furthermore, Mr. Caifa made the work environment so hostile that Mrs. Metevier, Ms. Groves, Mr. Smith, Ms. Washington, and Ms. Woods all retired from P.S. 346 or moved to other school locations. Each and every single one of these teachers are black. Mr. Caifa has never made any attempt to terminate or behave hostility towards a white staff member during his time as principal for P.S. 346. Ms. Simon has witnessed Mr. Caifa make comments that alluded to the black race that made children, staff, and parents feel uncomfortable. In fact, Mr. Caifa has undergone investigations due to his inappropriate behavior towards students and staff, including an investigation for sexual harassment against a staff member and a student. Furthermore, Ms. Simon's role was filled by a white woman and a white man after Ms. Simon was wrongfully terminated. Ms. Tia Scott, Ms. Vanessa Jackson, and Mr. Allen Hargrove Jr. are all willing to give statements regarding Mr. Caifa's problematic behavior.

32. Ms. Simon alleges that she was terminated as a result of discrimination based on race and disability status. Ms. Simon, a black woman, was treated unfairly during her 13-year employment period at P.S. 346. Mr. Caifa alleges that Ms. Simon was terminated for attendance reasons, but Ms. Simon was never met with to discuss her attendance and was terminated without notice or an opportunity to be heard. Proper protocol was not followed leading up to the termination of Ms. Simon, and falsified documents were placed in Ms. Simon's personal file without her knowledge. Even if there were reasons that Mr. Caifa or the School needed to address with Ms. Simon, the rules and regulations were not properly followed and Ms. Simon was not afforded the right to the same due process as her white counterparts.

## FIRST CAUSE OF ACTION
## (TITLE VII DISCRIMINATION)

33. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

34. At all relevant times hereto, Plaintiff was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

35. As outlined above, Defendant violated Title VII when it discriminated against Plaintiff by terminating Plaintiff's employment because of her race as a black woman and her disability status as someone who is diagnosed with Chronic Myofascial Derangement Syndrome, Entrapment Neuropathy, Anxiety, and Depression.

36. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well severe mental anguish and emotional distress, including, but not limited to, a worsening of her depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of damages, attorney's fees, and costs.

37. Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### (TITLE VII HARASSMENT)

38. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

39. At all relevant times hereto, Plaintiff was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

40. As outlined above, Defendant violated Title VII when it subjected Plaintiff to a hostile work environment because of Plaintiff's race and disability status.

41. Defendant is liable for the harassment that Plaintiff was subjected to during the course of Plaintiff's employment with Defendant because Defendant failed to engage in proper disciplinary protocol.

42. As a direct and proximate result of Defendant's harassing conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of damages, attorney's fees, and costs.

43. Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
## (TITLE VII RETALIATION)

44. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

45. At all relevant times hereto, Plaintiff was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

46. As outlined above, Defendant violated Title VII when it retaliated against Plaintiff by terminating Plaintiff's employment because Plaintiff engaged in activity protected by Title VII.

47. As a direct and proximate result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages,

including, but not limited to, loss of past and future income, compensation, and benefits, as well severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of damages, attorney's fees, and costs.

48. Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION

### (FMLA INTERFERENCE)

49. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

50. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA.

51. At all relevant times, Defendant met the definition of an "employer" under the FMLA because Defendant had 50 or more employees during the current and/or preceding calendar year.

52. Defendant violated the FMLA by unlawfully interfering with, restraining, and/or denying the exercises of Plaintiff's FMLA rights by, *inter alia*, failing to review and approve the FMLA applications Plaintiff rightfully submitted.

53. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief, including but not limited to recovery of her attorneys' fees, costs, in addition to interest at the prevailing interest rate.

54. Defendant's unlawful action constitute bad faith, malicious, willful, and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

## FIFTH CAUSE OF ACTION

### (FMLA RETALIATION)

55. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

56. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA.

57. At all relevant times, Defendant met the definition of an "employer" under the FMLA because Defendant had 50 or more employees during the current and/or preceding calendar year.

58. Defendant violated the FMLA by terminating Plaintiff's employment in retaliation for Plaintiff's exercise of rights protected by the FMLA.

59. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief, including but not limited to recovery of her attorneys' fees, costs, in addition to interest at the prevailing interest rate.

60. Defendant's unlawful action constitute bad faith, malicious, willful, and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

## SIXTH CLAIM FOR RELIEF

### 42 U.S.C. § 12112

**(Discrimination under the Americans with Disabilities Act / Failure to Accommodate)**

61. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

62. Since 2013 through the present, Plaintiff has been physically and mentally impaired due to her diagnoses of Chronic Myofascial Derangement Syndrome, Entrapment Neuropathy, Anxiety and Depression.

63. At all relevant times, Plaintiff's physical condition has substantially limited her major life activities including but not limited to fully participating in the duties required of her job as a teacher's assistant and the ability to engage with students one on one, attending to students' academic, physical, personal and emotional needs, assisting in transition of students throughout the building, monitoring students during recess and organizing classroom and teaching materials.

64. At all relevant times, Plaintiff was qualified as "disabled" pursuant to the ADA because she was actually impaired as described in 42 U.S.C. § 12102(1)(A).

65. Plaintiff requested reasonable accommodations. Specifically, her doctor recommended and she requested time off from work to recover and to attend physical therapy sessions.

66. At all relevant times, Plaintiff was qualified to perform the essential duties of the Para Professional / Teachers Assistant position with the requested reasonable accommodation.

67. Defendant did not make a good faith effort to accommodate Plaintiff's disability.

68. All the accommodations that Plaintiff requested were reasonable.

69. None of the accommodations that Plaintiff requested would have created undue hardship for Defendant.

70. Defendant failed to communicate with Plaintiff meaningfully and in good faith concerning her disability and requested accommodations.

71. Defendant discriminated against Plaintiff in violation of the ADA by refusing to accommodate her disability.

72. Defendant knowingly and intentionally discriminated against Plaintiff because of her disability.

73. Defendant is liable for the acts and omissions of its agents and employees.

74. Plaintiff suffered injuries as a result of Defendant's failure to reasonably accommodate her disability.

75. Defendant's failure to accommodate Plaintiff's disability was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

76. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA when it refused to provide a reasonable accommodation for her disability.

## SEVENTH CLAIM FOR RELIEF

### 42 U.S.C. § 12203

**(Retaliation under the Americans with Disabilities Act)**

77. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

78. Plaintiff engaged in protected activity when she asked Defendant for reasonable accommodations for her disability, including, but not limited to, time off of work to recover and to attend physical therapy .

79. Plaintiff engaged in protected activity when she opposed Defendant's refusal to accommodate her disability and its retaliation against her for her protected activity. Filed grievances with the union, filed with the DHR, attempted to apply for FMLA, requested hardship transfer, requested to borrow future Cumulative Absence Reserve days, made request directly to the NYDOE office of Equal Opportunity and Diversity Management.

80. As a direct result of Plaintiff's request for a reasonable accommodation and opposition to conduct prohibited by the ADA, Defendant retaliated against Plaintiff by terminating her employment.

81. Defendant treated Plaintiff less favorably than her similarly situated counterparts who did not engage in protected activity.

82. Defendant interfered with Plaintiff in the exercise and enjoyment of her rights under the ADA by terminating her employment.

83. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiff and caused her injuries, damages, and losses.

84. Defendant's retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

85. Defendant's conduct was with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

## PRAYER FOR RELIEF

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, Suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

*WHEREFORE* Plaintiff respectfully requests that this Court enter judgment containing the following relief:

a. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein constitute an unlawful employment practice and are in violation of the ADA, Title VII, and the FMLA and that the defendant has harassed, discriminated against, and retaliated against Plaintiff,

b. An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and/or practices complained of herein;

c. An award of damages against Defendants for an amount to be proven at trial, plus interest, to compensate for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation and other benefits of employment but in no event, less than $1,000,000;

d. An award of damages against Defendants for an amount to be proven at trial, plus interest, to compensate for all non-monetary and compensatory damages, including but not limited to, compensation for plaintiff's mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress but in no event, less than $1,000,000;

e. An award of damages against Defendants for an amount to be proven at trial, plus interest, for any and all other monetary and non-monetary losses suffered by plaintiff, including, but not limited to, reputational harm and harm to professional reputation but in no event, less than $1,000,000;

  f. An award of punitive damages against Defendants for an amount to be determined by a jury but in no event, less than $1,000,000;

  g. Prejudgment and post-judgment interest on all amounts due;

  h. An award of costs that Plaintiff incurred in this action, including, but not limited to, Plaintiff's reasonable attorneys 'fees and costs to the fullest extent permitted by law; and

  i. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury in this matter.

Respectfully submitted,

Dated: October 17, 2023
   Astoria, New York

_____
Vincent Miletti, Esq.
The Law Firm of Vincent Miletti, Esq.
10 Halletts Point, Suite 1742
Astoria, New York 11102
(609) 353-6287
vmiletti@milettilaw.com
*Counsel to Plaintiff Shamika Simon*

To: *To Be Noticed*

## VERIFICATION

STATE OF NEW YORK    )

                                        )

COUNTY OF BRONX      )

Ms. SHAMIKA SIMON hereby attests, affirms, verifies, deposes and says that she is the Plaintiff in this matter, that she has read the foregoing Verified Amended Complaint and that she believes that the facts set forth therein are true and correct to the best of her knowledge, information, and belief. Ms. SHAMIKA SIMON's knowledge or information and belief are based on personal knowledge of the facts of this case.

                                                                                    SHAMIKA SIMON

Sworn to me, the undersigned, before

This __17__ day of __October__ 2023.

_____
NOTARY PUBLIC
Maria L. Tyner
NOTARY PUBLIC STATE OF NEW YORK
Registration No. 01TY6351021
Qualified in Queens County
Commission Expires November 21, 2024

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Case Management / Electronic Case Filing (CM/ECF) system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). An electronic copy of the foregoing was sent via CM/ECF to all parties. Any counsel for other parties who are not registered participants is being served by first-class mail on the date of electronic filing.

_____
Vincent Miletti, Esq.