UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

SHAMIKA SIMON,

                    Plaintiff,            **MEMORANDUM & ORDER**
                                          23-CV-7796 (EK)(LKE)

           -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

                    Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

        After she was terminated from her job as a teacher's

assistant, Shamika Simon brought this action against the New

York City Department of Education, Abe Stark Primary School,

Kevin Caifa (the school's principal), and Polixeni Vafiadi (its

assistant principal).  Her complaint includes thirteen claims

under five federal and state statutes.  Defendants have moved to

dismiss for failure to state a claim.  For the following

reasons, the motion is granted with respect to all claims except

two: Simon's discrimination claims under Title VII of the Civil

Rights Act of 1964 and the Americans with Disabilities Act.

## I.  Background

        The following facts are drawn from Simon's complaint

and assumed true for purposes of the motion to dismiss.  *Holmes*

*v. Grubman*, 568 F.3d 329, 332 (2d Cir. 2009).  Principal Caifa

hired Simon as a teacher's assistant in 2005.  ECF No. 11 ("Am. Compl.") ¶ 22.  In 2013, Simon was injured in a car accident. *Id.* ¶ 27.  She applied for leave under the Family Medical Leave Act, citing her diagnoses of myofascial derangement, lumbar disc herniation, and a right knee sprain.  *Id.* ¶ 28.  The school granted this request.  *Id* ¶ 27.  Her FMLA leave ran for a period of approximately five weeks in December 2013 and January 2014. *Id.*  The complaint indicates that she was also granted "time off for physical therapy treatments" — presumably after the period of leave terminated.  *Id.*  Later in 2014, Simon became pregnant and apparently faced complications.  *Id.* ¶ 39 (reporting "high-risk pregnancy").

Simon alleges that she faced continuing medical issues in the ensuing years.  These caused her to be absent from work for fourteen days in the 2014-15 schoolyear, thirty days in 2015-16, and forty-two days in 2016-17.  *Id.* ¶¶ 39, 42, 51. Simon maintains that each absence was either contractually allowed or "medically excused."  *Id.*  At the same time, she acknowledges that she obtained the medical excuse for at least some of these absences after the fact.  *E.g.*, *id.* ¶¶ 43-45 (reporting that certain medical facilities provided notes "asking Ms. Simon's employer to excuse her from work" for dates preceding the issuance of the notes); *see also id.* ¶¶ 49-50 (also describing retroactive documentation of absences).  The

2

complaint also acknowledges that some of her absence requests were denied — an allegation that is perhaps in tension with, if not contradictory of, her claim that all absences were contractually permitted or medically excused. *E.g.*, *id.* ¶ 2 (reporting that plaintiff was "denied time off").

Simon acknowledges that the school granted her request for additional "Maternity / Child Care Leave" under the FMLA. *Id.* ¶ 56. But in December 2016, she submitted an additional request for *medical* leave that, in her telling, Caifa simply declined to process. *Id.* ¶ 55.

In January of 2017, Simon was suspended (though this suspension was later deemed improper and reversed). *Id.* ¶ 51. On June 14, 2018, the school fired her. *Id.* ¶ 59. Her termination letter indicated that this action was taken "for lateness and absences." *Id.* Simon alleges that Caifa used her legitimate absences as pretext, motivated by his desire to "sabotage [her] career because she is a black woman who has suffered from medical disabilities." *Id.* ¶ 61. She also contends that Caifa misstated her actual number of absences, improperly denied "several" requests for medical leave under the FMLA, removed explanatory doctors' notes from her file, and fabricated records of disciplinary meetings that never happened. *Id.* ¶¶ 38, 39, 42, 55, 56, 57, 59, 60.

Simon alleges that Caifa treated white employees more favorably than her, affording specific white employees "procedures and courtesies" in response to attendance issues that he did not extend to Simon; that he treated black employees poorly by firing them and making false statements about them, and that he "alluded to the black race" in a way that made people "uncomfortable." *Id.* ¶¶ 61, 62.[1]  Finally, Simon alleges that her role was filled by a white woman and a white man. *Id.* ¶ 62.

Following her termination, Simon filed grievances with her union on June 14, 2018 and June 26, 2018. *Id.* ¶ 60.  She later filed complaints with the New York State Division of Human Rights (NYSDHR), in October 2018 and January 2019, alleging discrimination based on race and disability.  Mem. in Supp. 4, ECF No. 24-2.[2]  The NYSDHR filed Simon's complaint with the EEOC.

---

[1] Simon alleges that Caifa scheduled a meeting "to discuss Ms. Simon's lateness and absence" on November 17, 2017, and that, when she did not appear (having been "released from work at 1:00pm that day, making the meeting impossible"), he fabricated a record of the meeting. Am. Compl. ¶ 57.  In contrast, white teachers received "personal letter[s] in [their] file[s] and the opportunity to meet with Mr. Caifa about [their] attendance — not just a demand by Mr. Caifa to meet regarding misconduct allegations and a false, made-up letter outlining a non-existent meeting." *Id.* ¶ 61.

At oral argument, Simon's counsel characterized the white comparator's "personal letter" as a "disciplinary notice."  Transcript of Proceedings on July 22, 2025, at 8:4-10 ("Oral Argument Transcript"), ECF No. 40.  Thus, it is unclear how the white employees' "opportunities" differed from the "demand" that Caifa allegedly issued Simon.  Also, Simon alleges that Caifa "never addressed any attendance issues with Ms. Simon until 2018."  Am. Compl. ¶ 61.  But her own reference to the November 17 letter contradicts this allegation.

[2] Page numbers in citations to record documents other than transcripts and briefs refer to ECF pagination.

ECF No. 28-9.  In April and December of 2019, the NYSDHR dismissed Simon's complaints.  ECF No. 24-2.  Three and a half years later, the EEOC issued Simon a right to sue letter, stating that it had "adopted the findings of the state or local fair employment practices agency that investigated your charge."[3] ECF No. 17-1.  Simon then timely brought this action.

## II.  Analysis

### A.  Legal Standard

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4]  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). The Court must also "confine its consideration to facts stated on the face of the complaint, in documents appended

---

[3] Plaintiffs are expected to attach their right-to-sue letter to their initial pleadings, and failure to do so generally is grounds for dismissal with leave to amend. *Donadio v. Velis Assocs., Inc.*, No. 18-CV-6708, 2019 WL 4621975, *4 (E.D.N.Y. Sept. 14, 2019).  However, courts in this circuit have held that submission of the letter elsewhere in the docket is also acceptable. *Ramirez v. City of New York*, No. 24-CV-1061, 2024 WL 3904998, *2 (S.D.N.Y. Aug. 22, 2024).  Simon referenced her letter in her pleadings (Am. Compl. ¶ 20) and subsequently filed it as an independent exhibit.  ECF No. 17-1.  Such a stand-alone filing is adequate to satisfy the attachment requirement.

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

**B.   Title VII**

1.   <u>Discrimination</u>

Title VII creates liability only for employer-entities, not individual supervisors. *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). Thus, Simon's claims can proceed against the Department of Education only.[5] Simon alleges that these defendants discriminated against her "by terminating [her] employment because of her race as a black woman." Am. Compl. ¶ 66. The defendants agree that Simon's claims of unlawful termination are not barred by Title VII's timing requirements.[6] Mem. in Supp. 7.

Simon states a *prima facie* case of discrimination under Title VII. The *prima facie* case — step one of the burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) — consists of four requirements:

---

[5] All claims against Abe Stark Primary School must be dismissed, as New York public schools are not suable entities. *See Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159 (2d Cir. 2008).

[6] A plaintiff must file an administrative charge with the EEOC within 300 days of the allegedly discriminatory act where, as here, "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief." 42 U.S.C. § 2000e-5(e)(1). Simon first filed charges with the NYSDHR on October 11, 2018, which then filed them with the EEOC. Thus, claims relating to conduct from before December 15, 2017 are presumptively time-barred. Simon's termination occurred after that date, in June 2018. To the extent that Simon relies on earlier conduct, she remains free to cite such conduct as evidence. *Magadia v. Napolitano*, No. 06-CV-14386, 2009 WL 510739, *11 (S.D.N.Y. 2009).

a plaintiff must show (1) that she is a member of a protected class, (2) that she was qualified for employment in the position, (3) that she suffered an adverse employment action, and (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).

Only the fourth requirement — the plausible inference that Simon's termination was based on race — is disputed here.[7] But the burden on this element is not high at this stage. To survive a motion to dismiss, a plaintiff need not present "substantial evidence" of discriminatory intent; "minimal [factual] support" for an inference thereof is sufficient. *Id.* at 311. The complaint clears this modest hurdle.

Simon alleges that her role was filled by a white woman and a white man following her departure. Am. Compl. ¶ 62. (She does not indicate why it took two people to replace her.) The *Littlejohn* court suggested that when the other elements of the *prima facie* case are satisfied, an employer's replacement of a terminated employee with an individual outside the employee's protected class "will ordinarily suffice for the required

---

[7] Defense counsel indicated at oral argument that her clients may, at a later stage of the case, dispute whether Simon remained qualified for the job in light of her attendance record. Transcript of Proceedings on July 22, at 49-52 ("Oral Argument Transcript"), ECF No. 40. But because that would require the defendants to marshal facts outside the four corners of the complaint, that element is not now disputed.

inference of discrimination." *Littlejohn*, 795 F.3d at 313.  And in this case, Simon has alleged more: that Caifa afforded her white colleagues a comparatively accommodating disciplinary process in response to attendance problems; treated black employees with a hostility he did not show toward white employees; and made racially tinged comments.  Am. Compl. ¶¶ 61, 62.  These allegations are fairly generic, and it remains to be seen whether Simon can adduce the evidence required to prevail at summary judgment and / or trial.  Still, taken together, her allegations are sufficient at this stage.  *See Littlejohn*, 795 F.3d at 312 ("An inference of discrimination can arise from circumstances including, but not limited to, the employer's . . . invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group . . . .").

   2.   Hostile Work Environment

      In her second cause of action (styled "Title VII Harassment"), Simon alleges that the "Defendant" — she does not say which one — "subjected [her] to a hostile work environment because of [her] race and disability status."  Am. Compl. ¶ 71.  The defendant did so, she claims, by (1) ignoring her FMLA leave requests on an unspecified number of occasions between 2014 and 2017, and (2) filing false disciplinary letters in November 2017, January 2018, and June 2018.  Mem. in Opp. 25, ECF No. 26.

She also alleges, in generic formulation, that she was subjected to actions "intended to humiliate and marginalize her based on her race and disability." *Id.* This claim is timely.[8]

Still, Simon fails to state a claim of harassment under Title VII. To do so, a plaintiff must allege conduct (1) that "is objectively severe or pervasive," (2) that the plaintiff subjectively perceives as hostile or abusive, and (3) that creates such an environment because of the plaintiff's protected characteristic. *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001), *as amended* (Apr. 20, 2001). Simon's complaint fails to meet either prong.

To satisfy the "severe and pervasive" standard, a plaintiff must allege a workplace so permeated with "discriminatory intimidation, ridicule, and insult" as to "alter the conditions of [the victim's] employment and create an

---

[8] Although some of the acts alleged to have contributed to this environment fall outside of Title VII's 300-day filing period, Simon invokes the continuing violation doctrine. A continuing violation is "a series of separate acts that collectively constitute one unlawful practice." *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022). The doctrine effectively "delay[s] the commencement of the statute of limitations period until the last discriminatory act in furtherance" thereof. *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). A hostile environment claim "by [its] nature accrue[s] only after the plaintiff has been subjected to some threshold amount of mistreatment," and so is subject to the doctrine. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). Thus, a plaintiff "need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).

Simon alleges that on January 24, 2018, she received a letter from Caifa stating that she failed to show up for a scheduled meeting to discuss "an allegation of misconduct." Am. Compl. ¶ 58. This may be insufficient to state a claim (even taken together with Simon's other allegations), but (for timeliness purposes) it is part of the same continuing course of action alleged.

abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). When evaluating such claims, courts consider severity and frequency together as part of the "totality of the circumstances." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). In rare circumstances that are not present here, a single "extraordinarily severe" incident could suffice. *Howley v. Town of Stratford*, 217 F.3d 141, 153, 154 (2d Cir. 2000). But for a plaintiff alleging a hostile work environment based on frequency, the incidents must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *See Raspardo*, 770 F.3d at 114.

Courts in this circuit have repeatedly held that the refusal of requests for medical leave or disability accommodation is not "severe" conduct. *See Kugel v. Queens Nassau Nursing Home Inc.*, 568 F. Supp. 3d 253, 263 (E.D.N.Y. 2021); *Lee v. Saul*, No. 19-CV-6553, 2022 WL 873511, at *14 (S.D.N.Y. 2022). Caifa ignoring Simon's FMLA leave requests likewise falls well below the required threshold.

Simon makes conclusory assertions that the defendant's conduct was "continuous and concerted," not just episodic, and that it "made it difficult to perform her job duties effectively." Mem. in Opp. 25, 26. However, Simon identifies only one specific FMLA leave request that Caifa allegedly ignored. Am. Compl. ¶ 55. Earlier in the complaint, when

discussing events from 2014, Simon alleges that she "provided Mr. Caifa with several . . . FMLA applications that he refused to approve for no justifiable reason," resulting in an investigation by the New York State Department of Labor "at some point." *Id.* ¶¶ 37, 38.  These sparse allegations suggest at most a handful of refusals, spread across a three-year period. They are insufficient to "alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67.

As for the falsification of disciplinary records, Simon's pleadings indicate that she became aware of these documents only after her termination.[9]  Thus, she cannot allege that she perceived her work environment as hostile on the basis of these events. *See Raspardo*, 770 F.3d at 118.  And even if Simon *had* received the falsified documents on the dates they were produced, her claim would still be unavailing.  Simon alleges three letters containing incorrect factual assertions, issued over a seven-month period.  Am. Compl. ¶¶ 57, 58, 59.

---

[9] Simon states that she filed a grievance with her union following her termination, on July 14, and "then, after coming to learn of the discrepancies and falsified documents placed in her personal file, such as the documentation of the meeting that never actually occurred and the false indications that Ms. Simon refused to sign documents," filed another grievance on June 26.  Am. Compl. ¶ 60.

This conduct, too, is insufficiently severe or continuous to make out a hostile work environment.[10]

## C.    **FMLA Claims: Interference and Retaliation**

Simon's claims of interference and retaliation under the Family Medical Leave Act are time-barred. The FMLA provides that a plaintiff alleging a willful violation of the statute must bring a claim within three years of the last event constituting the alleged violation. 29 U.S.C. § 2617(c)(2). Because Simon did not file suit until October 2023 — over five years after her termination — these claims are untimely.

Simon argues that (1) the continuing violation doctrine enables her to bring claims that would otherwise be time-barred; (2) equitable estoppel prevents the defendant from raising a statute of limitations defense; and (3) the statute of limitations should be tolled because a discriminatory, hostile work environment impeded her from filing on time. Mem. in Opp. 17, 18. These arguments are unavailing.

The continuing violation doctrine cannot apply here because, unlike with Simon's Title VII and ADA claims

---

[10] Simon had originally brought a Title VII retaliation claim. At oral argument, her counsel agreed to dismiss this claim after being asked to identify the protected activity in which his client allegedly engaged. *See* Oral Argument Transcript at 34:3-35:17; Docket Entry dated July 22, 2025.

arising from her termination, there is no timely allegation to anchor it.  Even the last allegedly discriminatory act occurred well over three years before filing.

Equitable estoppel does not apply either.  A plaintiff invoking this doctrine must show that "the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it," and "the plaintiff reasonably relied on that misrepresentation" to her detriment.  *Wall v. Constr. & Gen. Laborers' Union, Loc. 230*, 224 F.3d 168, 176 (2d Cir. 2000).  Simon does not contend that she delayed her filing in reliance on any misrepresentations made by the defendants.

Finally, Simon has proffered no plausible basis for equitable tolling.  "The essence of the doctrine of equitable tolling is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action."  *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 144 (2d Cir. 2025).  For instance, a plaintiff may be "actively misled by his employer" or "not have any reason to suspect discrimination until they learned facts that caused them to realize that their experience was part of a larger pattern of discrimination."  *Id.* at 144-45.  Simon makes no such contention.

D.   **Americans with Disabilities Act**

1.   Discrimination

Like Title VII, the ADA does not impose liability on individuals.  *Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009).  Simon's ADA claims can therefore proceed only against the Department of Education.  Simon alleges that the DoE discriminated "by terminating [her] employment because of her disability status as someone who is diagnosed with Chronic Myofascial Derangement Syndrome, Entrapment Neuropathy, Anxiety and Depression."  Am. Compl. ¶ 66.  She also alleges that defendant "discriminated against [her] in violation of the ADA by refusing to accommodate her disability."  *Id.* ¶ 102.[11]

As with Title VII, a plaintiff alleging an ADA violation must file a charge with the EEOC within 300 days of the allegedly discriminatory act.  *Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011).  Simon has not alleged that she requested any accommodation in the 300 days preceding her EEOC filing.  We therefore evaluate Simon's

---

[11] Simon alleges that her termination was based on disability only under her first cause of action, titled "Title VII Discrimination."  Am. Compl. ¶ 66.  Her sixth cause of action, titled "Discrimination under the Americans with Disabilities Act/Failure to Accommodate," only alleges a discriminatory failure to accommodate, which, as discussed in Section II(D)(2), is time-barred.  *Id.* ¶ 102.  Notwithstanding the way Simon's complaint is organized, this Court reads the allegations in Paragraph 66 as forming the basis of her ADA discrimination claim.

claim of ADA discrimination with respect to her termination only.

Simon does state a claim of ADA discrimination, albeit by a narrow margin. "The elements of a [discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). At the motion to dismiss stage, "a plaintiff is not required to plead a *prima facie* case," but must "demonstrate that she suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

Although the parties dispute only the fifth prong, Simon's pleadings call the third into question as well. "To be a qualified individual, in addition to possessing the skills necessary to perform the job in

15

question, an employee must be willing and able to demonstrate those skills by coming to work on a regular basis." *Ramirez v. N.Y.C. Bd. of Educ.*, 481 F. Supp. 2d 209, 221 (E.D.N.Y. 2007).  Thus, "[u]nder the ADA, an employee's absenteeism may be a permissible motive for an adverse employment decision." *Morris v. City of New York*, 153 F. Supp. 2d 494, 502 (S.D.N.Y. 2001).  This is true "even when attendance problems are caused by an employee's disability." *Mescall v. Marra*, 49 F. Supp. 2d 365, 374 n.18 (S.D.N.Y. 1999); *see also Francis v. Wyckoff Heights Med. Ctr.*, 177 F. Supp. 3d 754, 775 (E.D.N.Y. 2016) (prong 3 unsatisfied where plaintiff with chronic medical condition "fail[ed] to identify a reasonable accommodation that would allow her to achieve regular and predictable attendance at work").

The Second Circuit has left unresolved the question of whether medical leave can constitute a reasonable accommodation under the ADA.  *Petrone v. Hampton Bays Union Free Sch. Dist.*, 568 F. App'x 5, 7 n.2 (2d Cir. 2014).  It has, however, affirmed the broader principle that "a reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003).  Applying this principle, district courts have held that

taking medical leave which is "very long" or "sporadic" such that "the employer has no way of knowing, from one day to the next, if their employee will even be reporting to work," is unreasonable as a matter of law. *Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 201 (S.D.N.Y. 1999).[12]

Simon admits to being absent fourteen days in the 2014-15 school year, thirty days in 2015-16, and forty-two days in 2016-17. Am. Compl. ¶¶ 39, 42, 51. However, she claims that each of those absences was either "contractually permitted" or "excused" by virtue of her obtaining a doctor's note. *Id.* ¶¶ 36, 42, 51. She pleads no facts regarding her attendance during the 2017-18 school year that preceded her termination. In the end, Simon's showing on prong (3) is marginal at best. Still, "the nature of a job's essential functions is a fact-bound question ill-suited for resolution on a motion to dismiss." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 570 (S.D.N.Y. 2023) (collecting cases). Accordingly, the claim will not be dismissed on this basis at this stage.

---

[12] *See also, e.g.*, *Reddick v. Niagara Mohawk Power Co.*, No. 08-CV-995, 2010 WL 5185098, at *6 (N.D.N.Y. Dec. 16, 2010) (rejecting the reasonableness of plaintiff's migraine-related requests for leave); *Benson v. Westchester Med. Ctr.*, No. 20-CV-5076, 2022 WL 2702544, at *11 (S.D.N.Y. July 12, 2022) (request to excuse "any absences caused by [plaintiff's] asthma" is "not a reasonable accommodation under the ADA . . . and, in fact, suggests the plaintiff cannot perform the essential functions of his job").

To satisfy prong (5), a plaintiff must "give plausible support to a minimal inference of discriminatory motivation." *Dooley*, 636 F. App'x at 21. Courts have found such a plausible inference based on procedural irregularities in the plaintiff's termination, coupled with closeness in time between the injury and the adverse employment action. *See, e.g.*, *Dooley*, 636 F. App'x at 21 (plaintiff "correctly argue[d] there was proof of pretext" in the divergence between her termination and the policy "ordinarily" followed). And "[p]roof that the defendant's explanation is unworthy of credence is probative of intentional discrimination." *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 147 (2000).

Simon alleges that Caifa (1) repeatedly overstated the number of days that Simon had been absent without medical authorization, (2) accepted her FMLA requests for maternity and childcare leave while ignoring her FMLA requests for medical leave, (3) fabricated records of a disciplinary meeting that never took place, falsely reporting that Simon had attributed her poor attendance to "living in the Bronx" and having "childcare issues," (4) removed doctors' notes from her file, and (5) did not follow the same protocol for terminating Simon as for others. Am. Compl. ¶¶ 27, 36, 37, 39, 42, 55, 56, 57, 60,

61, 63.  Many of these statements are lacking in specifics and supporting factual content (and most are of course disputed).  But they are generally sufficient, at this stage, to carry the plaintiff's (relatively low) burden.

   2.   Failure to Accommodate

        Simon's claim that "defendant did not make a good faith effort to accommodate [her] disability," is also time-barred.  Am. Compl. ¶ 98.  Simon does not allege that she made any requests for accommodation after December 15, 2017, the earliest date within her statute of limitations window.  The continuing violation doctrine cannot rescue this claim, because Simon does not plead that any failure occurred during the period between December 15, 2017 and her termination.[13]  As pleaded, the latest relevant event was Caifa's refusal to process FMLA paperwork in February 2017.  This claim is therefore dismissed.

   3.   Retaliation

_____

[13] In addition to invoking the continuing violation doctrine, Simon argues that her claim should not be time-barred because it is "reasonably related" to the charges she brought before the EEOC, and because equity requires it.  Mem. in Opp. 16, 17.  These arguments are inapplicable to this or any other issue.  Under the "reasonably related" doctrine, courts have waived the EEOC filing requirement for claims related to charges that were previously and *timely* filed with the EEOC.  *See e.g. Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003).  The "reasonably related" doctrine does *not* enable a plaintiff to bring a claim that would otherwise be time-barred.  *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).  Plaintiff's second argument, that equity requires a waiver of "procedural technicalities" so she can "seek justice," is inadequate.  *Demoret v. Zegarelli*, 451 F.3d 140 (2d Cir. 2006).

Simon fails to state a claim of retaliation under the ADA.[14]  As with Title VII, a plaintiff claiming retaliation must plausibly plead that his engagement in a protected activity was a but-for cause of an adverse employment action.  *Campbell v. IPsoft Inc.*, No. 18-CV-10684, 2021 WL 4248861, at *21 (S.D.N.Y. Sept. 17, 2021).  Simon has not done so here.

Protected activity comprises "action[s] taken to protest or oppose statutorily prohibited discrimination." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 267 (E.D.N.Y. 2015).[15]  The Second Circuit has held that "seeking reasonable accommodation" of a disability also constitutes protected activity under the ADA.  *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002).[16]  A causal connection between a protected activity and an adverse employment action "can be shown either (1) indirectly, by showing that the protected

---

[14] The claim is not time-barred because Simon's termination, the alleged retaliatory act, falls within the statute of limitations period.  *See* footnote 6, above.

[15] The challenged conduct need not actually have been a violation of the statute, so long as the plaintiff genuinely believed it was.  *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999).

[16] In the absence of a circuit ruling as to whether medical leave constitutes a reasonable accommodation as a matter of law, district courts have split on the question of whether FMLA requests are protected activities. *See Kastrati v. Progress of Peoples Mgmt. Corp.*, No. 18-CV-6731, 2020 WL 6940991, at *5 (E.D.N.Y. Nov. 24, 2020) ("A request for FMLA leave, without more, cannot constitute a protected activity for the purposes of an ADA retaliation claim."); *Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-CV-9723, 2021 WL 4198126, at *3 (S.D.N.Y. Sept. 15, 2021) (declining to follow *Kastrati*).

activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019).

Simon states that she "filed grievances with the union, filed with the DHR, attempted to apply for FMLA, requested hardship transfer, requested to borrow future Cumulative Absence Reserve days, and made requests directly to the NYDOE office of Equal Opportunity and Diversity Management," and that, as a "direct result" of these activities, defendants terminated her employment.  Am. Compl. ¶¶ 110, 111.  However, Simon has not demonstrated that each of these alleged actions constitutes a protected activity, or was a but-for cause of her termination. Simon's 2011 grievance cannot form the basis of an ADA retaliation claim, as it preceded the injury alleged to have caused her disability and was filed collectively with other employees, none of whom Simon alleges was disabled. *Id.* ¶ 26.  The grievances mentioned in Simon's complaint and DHR complaint came after her termination, so they cannot be a but-for cause of it, either.

Simon provides no basis, direct or circumstantial, from which to infer that her termination

was in retaliation against the other activities pleaded.
She does not allege facts suggesting retaliatory animus.
Although she alleges that other employees received more
favorable treatment in response to their attendance issues,
she does not state whether those colleagues had requested
medical accommodations. *Id.* ¶ 61. Simon cannot rely on
temporal proximity, either. Of the remaining activities —
requesting FMLA leave, requesting to borrow future
Cumulative Absence Reserve days (i.e. sick days),
requesting hardship transfer, and making unspecified
requests to the Office of Equal Opportunity — Simon
specifies the date of only one request for FMLA leave, from
December 2016. *Id.* ¶ 55. In the absence of any other
support, a delay of one year is too long to establish a
causal link to her termination. *See Walder v. White Plains
Bd. of Educ.*, 738 F. Supp. 2d 483, 503 (S.D.N.Y. 2010)
("Most of the decisions in this Circuit that have addressed
this issue have held that lapses of time shorter than even
three months are insufficient to support an inference of
causation."). Simon thus fails to state a claim of
retaliation under the ADA.

**E.  NYSHRL and NYCHRL Claims: Discrimination, Harassment, and Retaliation**

Simon's claims under both the NYSHRL and NYCHRL are barred by those statutes' election of remedies requirements.  The election of remedies provision of New York State Human Rights Law (NYSHRL) states that a plaintiff who files an administrative claim with "any local commission on human rights" cannot subsequently bring the same claim in a lawsuit.  N.Y. Exec. Law § 297(9); *see also York v. Ass'n of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002).  New York City Human Rights Law (NYCHRL) has an equivalent provision.  N.Y.C. Admin. Code § 8-502.  Simon filed claims with the NYSDHR in October 2018 and January 2019, alleging discrimination under Title VII and the ADA.  ECF No. 24-3.  Therefore, she is barred from subsequently bringing suit for the same wrongs.

Simon argues an exception applies.  A claim is not barred when the complaint was referred from the EEOC to NYSDHR pursuant to the requirements of Title VII.  *York*, 286 F.3d at 127 n.2.  Simon argues "there was no true intention by the state agency . . . to investigate; instead, they simply waited on the EEOC and adopted whatever resolution the EEOC determined."  Mem. in Opp. 19.

The record indicates the opposite.[17]  The EEOC letter sent to DoE states that "a charge of employment discrimination under Title VII has been received by the NYSDHR and sent to the EEOC for dual filing purposes."  ECF No. 28-9.  The NYSDHR letters concluded, "after investigation," that there was no probable cause.  ECF No. 24-2.  Finally, the EEOC right-to-sue letter states, "the EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge."  ECF No. 17-1, Ex. 1.  Thus, the exception does not apply.[18]

### III. Conclusion

For the reasons set forth above, the motion to dismiss for failure to state a claim is granted with respect to all claims except Title VII discrimination and

---

[17] "Where an exhaustion of remedies is a prerequisite to bringing suit," as with Title VII claims, a court "may take judicial notice of the public records and reports of relevant administrative bodies" — such as the EEOC and the NYSDHR — "and the facts set forth therein."  *Guy v. MTA N.Y.C. Transit*, 407 F. Supp. 3d 183, 191 (E.D.N.Y. 2016).

[18] Even if the election of remedies rules did not apply, New York Education Law Section 3813's notice of claim requirement would still bar Simon from bringing suit under NYSHRL and NYCHRL.  Under Section 3813(1), a plaintiff must "file a notice of claim prior to any action against a school district or its officers, to be presented within three months of the date when the claim arose."  *Bernheim v. New York City Dep't of Educ.*, No. 19-CV-9723, 2020 WL 3865119 (S.D.N.Y. 2020), *report and recommendation adopted*, 2020 WL 4383503.  The notice of claim requirement applies to discrimination claims, and failure to file notice is grounds for dismissal.  *Id.* at *4.  A court may deem the notice requirement satisfied where the defendant was "sufficiently informed" of the claim within the statutory period by other means.  *Deposit Cent. Sch. Dist. v. Pub. Emp. Rels. Bd.*, 633 N.Y.S.2d 607, 610 (App. Div. 3d Dep't 1995).  However, Simon's EEOC grievance did not reach the defendant until a full year after the statutory three-month period had passed.  ECF No. 28-9.  Even if news of the complaint had reached the defendant as soon as the EEOC filed Simon's grievance, in October 2018, this would still have fallen outside of the three-month window.

ADA discrimination against the New York City Department of Education.

        SO ORDERED.


                                       /s/ Eric Komitee
                                   ERIC KOMITEE
                                   United States District Judge


Dated:     August 7, 2025
           Brooklyn, New York